# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICHARD J. DITZIK,

      Plaintiff,                                  Case No. 05-73584

v.                                                    Hon. Gerald E. Rosen

ERGOTRON, INC., *et al.,*

      Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT
GATEWAY'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    July 23, 2008   

PRESENT: Honorable Gerald E. Rosen
                  United States District Judge

## I. INTRODUCTION

Plaintiff Richard J. Ditzik brought the present suit in this Court on September 19, 2005, asserting claims of patent infringement against a variety of manufacturers and sellers of height adjustable flat panel computer displays, including Defendant Gateway, Inc. In the period following the commencement of this action, Plaintiff settled his claims against several defendants, including Acer America Corp. As part of his settlement with this defendant in March of 2006, Plaintiff entered into a Patent License Agreement (the "Agreement") with Acer America Corp. and its affiliate, Acer Inc. (collectively "Acer"), under which Acer was granted a non-exclusive license to sell its products free of liability

for infringement of the patents-in-suit.

Through the present motion, filed on January 30, 2008, Defendant Gateway argues that the Agreement entered into between Plaintiff and Acer operates to extinguish Gateway's liability for patent infringement in this case. In support of this contention, Gateway points to its merger in October of 2007 with Galaxy Acquisition Corp., a wholly-owned subsidiary of Acer. As noted by Gateway, the Agreement defines the patent "licensee" as Acer and its affiliates, including those "hereafter" acquired by Acer, and it further defines the "licensed products" that Acer may sell as all height adjustable flat panel displays that the "licensee" sells or has sold "currently, in the past and in the future." (Gateway's Motion, Ex. 1-A, Patent License Agreement at ¶¶ 1.1, 1.4.) It follows, in Gateway's view, that all of its height adjustable flat panel displays are "licensed products" within the meaning of the Agreement, and that it cannot be held liable for infringement by virtue of its status as a "licensee" that has been granted a license to sell these "licensed products" at all times, including "in the past." In response, Plaintiff argues that the license granted under the Agreement operates only prospectively, and thus cannot free Gateway from liability for any acts of infringement that predated Gateway's attainment of "licensee" status upon its merger with an Acer affiliate.

Having reviewed the parties' briefs in support of and opposition to Gateway's motion, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the

Court will decide Gateway's motion "on the briefs." See Local Rule 7.1(e)(2), Eastern District of Michigan. This opinion sets forth the Court's rulings on this motion.

## II. FACTUAL BACKGROUND

As both parties acknowledge, the disposition of the present motion turns upon the terms of a Patent License Agreement (the "Agreement") entered into between Plaintiff Richard J. Ditzik and Defendant Acer America Corp. in March of 2006. The Agreement recites that Plaintiff is the owner of the two patents-in-suit, and that he "has agreed to grant Licensee a license to the Patents in accordance with the terms and conditions of this License." (Gateway's Motion, Ex. 1-A, Patent License Agreement at 1.) The Agreement then defines a number of terms, stating that "Licensor" means Plaintiff "and his predecessors, assigns, agents, attorneys, insurers and representatives," and that "Licensee" encompasses Acer Inc. and Defendant Acer America Corp., as well as "their respective subsidiaries, and affiliates." (*Id.* at ¶¶ 1.1, 1.2.) This latter provision further states:

> For purposes of this License, "affiliates" shall mean and include any corporation, company, joint venture, partnership, firm or other entity formerly, now or hereafter controlled by, controlling, or under common control with Acer Inc. or Acer America Corp, where "control" means the direct or indirect ownership or control (whether through contract or otherwise) of at least fifty percent (50%) of the voting securities, capital or assets.

(*Id.* at ¶ 1.1.)

The heart of the Agreement, of course, is the provision granting a license to the patents-in-suit:

3

> Licensor hereby grants to Licensee, for the Term, a non-exclusive, fully paid, irrevocable, worldwide license under the Licensed Patents to[] use, sell, offer for sale, import, export, have made for sale by Licensee, or market Licensed Products free of liability for direct, inducing or contributory infringement of the Licensed Patents.

(*Id.* at ¶ 2.1.) The "Licensed Products" that the Licensee may market and sell are defined as "all height adjustable flat panel displays used, sold, offered for sale, or imported by Licensee currently, in the past and in the future." (*Id.* at ¶ 1.4.) In addition, the "Term" referenced in the above-quoted provision is defined as "the time in which this License is in force and is the time elapsing from the Effective Date until the expiration date of the last to expire of the Licensed Patents," (*id.* at ¶ 1.5), and the "Effective Date," in turn, is specified at the conclusion of the Agreement as "February __, 2006," (*id.* at 5).[1]

In a section of the Agreement entitled "ROYALTY PAYMENT," the Licensee agreed to pay a "License Fee" of $68,750.00. (*Id.* at ¶ 3.1.) Within three days after receiving this License Fee, Plaintiff promised to "draft and file with the United States District Court [for] the Eastern District of Michigan [a] Notice of Dismissal dismissing with prejudice all claims against Licensee" in the present suit. (*Id.* at ¶ 3.3.)[2]

In a section of the Agreement captioned "MISCELLANEOUS," the parties agreed that "[t]his License shall be construed and enforced in accordance with the procedural and

---

[1] The specific date is left blank in the Agreement, and the various parties signed the Agreement between February 14, 2006 and March 16, 2006.

[2] In accordance with this provision, Plaintiff filed a notice of dismissal on March 28, 2006, stating that he was voluntarily dismissing with prejudice his claims against Defendant Acer America Corp.

4

substantive laws of Michigan except its rules regarding conflicts of laws." (*Id.* at ¶ 5.9.) They further specified that "[t]his License contains the entire understanding between Licensor and Licensee, superseding all prior or contemporaneous communications, agreements and understandings, oral or written, with respect to the subject matter of this License." (*Id.* at ¶ 5.10.) Finally, the parties agreed that in light of their "opportunity to contribute to the drafting of this License," the Agreement was to be "construed as drafted by both Parties," so that the "rule of construction providing that any ambiguities be resolved against the drafting Party shall not be employed in the interpretation of this License." (*Id.* at ¶ 5.6.)

On October 16, 2007, Defendant Gateway, Inc. merged with Galaxy Acquisition Corp., a wholly-owned subsidiary of Acer Inc.[3] Assuming, for present purposes, that Gateway satisfies the Agreement's definition of an "affiliate" as a result of this transaction, Plaintiff acknowledges that Gateway's post-merger sales of height adjustable flat panel displays qualify as sales by a "Licensee" under the Agreement, and that Gateway thus is free of liability for any claim of patent infringement arising from these sales. The question presented through Gateway's present motion, however, is whether the Agreement ***retroactively*** freed the company from liability for sales ***predating*** its merger with an Acer subsidiary, in light of the backward-looking language in the

---

[3]For purposes of the present motion, Plaintiff accepts this claim of merger. He notes, however, that he has not yet pursued discovery as to this alleged transaction, and he requests an opportunity to revisit this issue in the event that the materials produced in discovery cast doubt on Gateway's assertion that it has attained the status of a "licensee" as a result of this transaction.

Agreement's definition of the "Licensed Products" that a "Licensee" may sell without facing liability for patent infringement.

## III. ANALYSIS

### A. The Standards Governing Gateway's Motion

Through the present motion, Gateway seeks an award of summary judgment in its favor on Plaintiff's claims of patent infringement. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For present purposes, the parties agree upon the pertinent facts, and disagree only as to the proper interpretation of the terms of the Patent License Agreement. Because this is a question of law, *see Klapp v. United Insurance Group Agency, Inc.,* 468 Mich. 459, 663 N.W.2d 447, 451 (2003),[4] the parties' dispute is amenable to resolution as a matter of law under Rule 56. In particular, the disposition of Gateway's motion turns upon one purely legal question: whether the Patent License Agreement absolves Gateway of liability for its alleged infringement of Plaintiff's patents prior to its merger with an Acer subsidiary. The Court now turns to this question.

### B. The Patent License Agreement Does Not Absolve Gateway of Liability for Sales Made Prior to the Date It Became a "Licensee."

---

[4]In accordance with ¶ 5.9 of the Agreement, the Court looks to Michigan law in construing the relevant terms of the Agreement.

As noted above, all are agreed that, by virtue of its October 16, 2007 merger with an Acer subsidiary, Gateway became a "Licensee" under the Patent License Agreement executed by Plaintiff and Acer. As such, Gateway was entitled to the rights granted to the "Licensee" under the Agreement. In support of its present motion, Gateway argues that these rights extend to sales that *predated* its status as Licensee, in light of the language of the Agreement defining "Licensed Products" as "all height adjustable flat panel displays used, sold, offered for sale, or imported by Licensee currently, *in the past* and in the future." (Agreement at ¶ 1.4 (emphasis added).) In response, Plaintiff contends that the Agreement encompasses only those sales made by Gateway *as a Licensee* — *i.e.,* on or after October 16, 2007. The Court finds that Plaintiff has the better of the argument.

The Court's inquiry necessarily begins with the language of the Agreement itself, and this inquiry is guided by certain basic tenets of Michigan contract law.[5] "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.,* 445 Mich. 109, 517 N.W.2d 19, 29 n.28 (1994). Where possible, this intent must be ascertained through "the words used in the instrument," as the Court "does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." *Sheldon-Seatz, Inc. v. Coles*, 319 Mich. 401, 29 N.W.2d 832, 834-35 (1947) (internal quotations and citation

---

[5]As noted earlier, Michigan law governs the interpretation of the Agreement.

omitted). As the Michigan Supreme Court recently emphasized, a court simply is not at liberty to disregard the unambiguous terms of a contract on the ground that this plain meaning would defy the supposed "reasonable expectations" of the parties. *Wilkie v. Auto-Owners Insurance Co.,* 469 Mich. 41, 664 N.W.2d 776, 782 (2003). Finally, the Court must "construe [the Agreement] as a whole and give harmonious effect, if possible, to each word and phrase." *Singer v. Goff,* 334 Mich. 163, 54 N.W.2d 290, 292 (1952).

Turning, then, to the language of the Agreement, the Court begins with the seemingly unassailable proposition that the rights enjoyed by Gateway under this Agreement are at most extensive with, and certainly no greater than, the rights granted to Acer under the Agreement. Specifically, as to the scope of the license granted to Acer, the Agreement provides:

> Licensor hereby grants to Licensee, for the Term, a non-exclusive, fully paid, irrevocable, worldwide license under the Licensed Patents to[] use, sell, offer for sale, import, export, have made for sale by Licensee, or market Licensed Products free of liability for direct, inducing or contributory infringement of the Licensed Patents.

(Agreement at ¶ 2.1.) Thus, under the plain language of this provision, Acer is authorized during the term of the Agreement to use, sell, offer for sale, and market "Licensed Products" without fear of liability for infringement of Plaintiff's patents.

Yet, as expressly set forth in this provision, Acer's license to use, sell, offer for sale, and market "Licensed Products" is limited in time to the "Term" of the Agreement. The Agreement's "Term," in turn, is defined as "the time in which this License is in force," spanning "from the Effective Date" in February of 2006 "until the expiration date

8

of the last to expire of the Licensed Patents." (Agreement at ¶ 1.5.) It is only during this "Term," then, that Acer may use, sell, offer for sale, or market "Licensed Products" without facing the prospect of liability for patent infringement. It follows that Gateway, likewise, cannot claim freedom from liability for any use, sales, or marketing of "Licensed Products" that predated the Agreement's "Effective Date" in February of 2006. This defeats Gateway's contention in its present motion that the Agreement dictates the dismissal of all of Plaintiff's claims against Gateway, even those arising from its allegedly infringing activities prior to Acer's execution of the Agreement.

Although the plain language of ¶ 2.1 of the Agreement mandates this conclusion, it is further supported by two other provisions. First, beyond the license granted under ¶ 2.1 of the Agreement, a separate provision called for Plaintiff to file a notice of the dismissal of all claims in this suit against Defendant Acer America Corp. (*See id.* at ¶ 3.3.) This backward-looking release of Plaintiff's claims against Acer harmonizes well with the forward-looking license granted under ¶ 2.1. While such a release perhaps might have been included in the Agreement even if the license provision had the retrospective reach posited by Gateway, a prospective-only reading of ¶ 2.1 better comports with the usual rule that a contract should be read in a manner that gives meaning to each of its terms. *See Associated Truck Lines, Inc. v. Baer,* 346 Mich. 106, 77 N.W.2d 384, 386 (1956).[6]

---

[6]The Court notes that this construction also comports with the patent law presumption that licenses are prospective in nature. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.,* 467 F.3d 641, 647 (7th Cir. 2006); *see also Davis v. Blige,* 505 F.3d 90, 104 (2d Cir. 2007) (applying this principle in a copyright suit).

And, of course, while the dismissal required under ¶ 3.3 (and provided by Plaintiff in March of 2006) leaves no room for doubt that Plaintiff agreed to release any and all claims against Defendant Acer America Corp., Gateway cannot point to any term of the Agreement that evidences any similarly unambiguous intent to release Plaintiff's claims against any other defendant that might come under common control with Acer in the future.

Next, it is noteworthy that the Agreement includes an express representation that as of the "Effective Date," Acer's U.S. sales and inventory of height adjustable flat panel displays amounted to "*only* approximately <3718> units," and that "but for current quantities" of certain specified models that were in the possession of Acer's distributors and resellers, Acer did not "presently offer for sale additional quantities of these models in the United States." (Agreement at ¶ 3.2 (emphasis added).) These recitations serve no other apparent purpose than to explain the economic backdrop against which Plaintiff had agreed to accept a royalty payment of $68,750 in exchange for the license and release granted to Acer. To be sure, this statement of the background understanding of the parties would not override an explicit grant of a license that broadly encompassed both past and future sales by Acer and any other companies it might subsequently acquire. Yet, these recitations are suggestive, at least, of the parties' shared belief that Plaintiff had agreed to settle his infringement claims against a company, Acer, that held only a limited share of the domestic market for height adjustable flat panel displays. Again, the parties' evident understanding on this point fully comports with the Court's reading of ¶ 2.1 of the

10

Agreement as conferring a license only for *future* sales, and not past sales by entities that might come under common control with Acer.

Against these various considerations, Gateway's sole argument for a broader construction of the Agreement's license-granting provision rests upon this contract's definition of "Licensed Products" as encompassing "all height adjustable flat panel displays used, sold, offered for sale, or imported by Licensee currently, in the past and in the future." (Agreement at ¶ 1.4.) As Plaintiff concedes, Gateway is now a "Licensee" within the meaning given this term in the Agreement, by virtue of its merger with an Acer subsidiary. It follows that the Agreement's definition of "Licensed Products" includes *all* height adjustable flat panel displays used, sold, offered for sale, or imported by Gateway, as a Licensee, *at any time* in the past, currently, or in the future.

Yet, this broad definition of "Licensed Products" does not, standing alone, provide the freedom from liability sought in Gateway's motion. As the language of ¶ 2.1 makes clear, the Agreement's definition of "Licensed Products" establishes the universe of height adjustable flat panel displays that the "Licensee" may use, sell, offer for sale, or market without being subject to liability for patent infringement. But, apart from this specified set of *products* that the "Licensee" may sell, the Agreement also places a *temporal* limit upon the sales the "Licensee" may make without running afoul of Plaintiff's patents. In particular, and as explained earlier, the license granted under ¶ 2.1 authorizes only those sales made during the *"Term"* of the Agreement. Sales made *prior to* this "Term," in contrast, are not covered by the license granted under ¶ 2.1, regardless

11

of whether they involve "Licensed Products."

Contrary to Gateway's contention, the Court does not believe that this result reads the retrospective "in the past" language out of the Agreement's definition of "Licensed Products." Rather, this broad language presumably was intended to ensure that the license granted under the Agreement reached the entire universe of all height adjustable flat panel displays that the "Licensee" had sold in the past or might sell in the future, and to pretermit any possible argument that it might encompass something less than this complete product line. The Agreement's reference to past, present, or future use, sales, or offers for sale presumably defeats any argument, for example, that the definition of "Licensed Products" might not include displays that the "Licensee" had offered for sale in the past, abandoned for a time, and then decided to put back on the market at some point down the road. In any event, regardless of whether the broad wording of the definition of "Licensed Products" was essential to achieving the parties' intended purpose or was adopted merely out of an abundance of caution, the sweep of this definition does not trump the separate and independent limit in ¶ 2.1 to sales made during the "Term" of the Agreement.

This leaves only a single question upon which the parties' submissions are uniformly silent — namely, whether the Agreement shields Gateway from liability for any allegedly infringing activity after the Agreement's "Effective Date" of February of 2006, or only for such activity that occurred after Gateway became a "Licensee" upon its merger with an Acer subsidiary in October of 2007. In its desire to secure a broad award

of summary judgment that encompasses all of its allegedly infringing activity, both before and after February of 2006, Gateway has not advanced the fallback argument that its immunity from liability should at least extend back to the beginning of the "Term" of the license granted under ¶ 2.1 of the Agreement. Yet, a plausible argument can be made for such immunity, where the Agreement defines "Licensee" as Acer and its affiliates, including any entity "formerly, now or *hereafter* controlled by, controlling, or under common control with" Acer. (Agreement at ¶ 1.1 (emphasis added).) This broad definition of a "Licensee," combined with the broad definition of "Licensed Products," arguably supports the proposition that Gateway, as an entity that "hereafter" came under common control with Acer (and hence qualifies as a "Licensee"), has enjoyed a right throughout the "Term" of the Agreement to sell "Licensed Products" free of liability for patent infringement.

Once again, however, the Court finds that this construction of the Agreement is defeated by the plain language of ¶ 2.1. The better reading of this provision, in the Court's view, is that it grants a license only to those entities that are "Licensees" at the time of the relevant use, sale, or offer for sale. Just as the past/present/future language in the definition of "Licensed Products" is apparently intended to defeat any possible ambiguity in the scope of this definition, the Court views the similar past/present/future language in the definition of "Licensee" as intended to confirm that the universe of licensees is not limited to those entities under common control with Acer at any given point in time. As discussed earlier, however, these expansive definitions do not overcome

13

the additional restrictions imposed under ¶ 2.1 — specifically, that the license granted through this provision extends only to sales *by a "Licensee"* during the "Term" of the Agreement. In its brief in support of its motion, Gateway concedes that it "became a Licensee to the Ditzik Patents on October 16, 2007," (Defendant's Motion, Br. in Support at 4), by virtue of its merger with an Acer subsidiary. Consequently, only Gateway's sales after that date are shielded from liability for patent infringement under ¶ 2.1 of the Agreement.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Gateway, Inc.'s January 30, 2008 motion for summary judgment is DENIED. In light of this ruling, IT IS FURTHER ORDERED that Defendant Gateway, Inc.'s June 27, 2008 motion for hearing is DENIED AS MOOT.

                                        s/Gerald E. Rosen
                                        Gerald E. Rosen
                                        United States District Judge

Dated: July 23, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2008, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager